**Jimmie Lee FLORES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15927.**

United States Court of Appeals Ninth Circuit.

June 26, 1958.

Patrick F. Tuohy, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Charles B. Dwight, III, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Flores was indicted in the District Court for the crime of knowingly and designedly, by false and fraudulent representations, statements and pretenses, obtaining money from another person, in violation of the statute of Hawaii.[1] He was tried by jury, convicted and sentenced. This appeal resulted.

The record shows that Jimmie Lee Flores was a lieutenant in the United States Army, detailed among other duties, to assist members of his regiment with legal problems. His duties, included giving such aid to enlisted men dealing with civilian agencies off the

1. § 11440, Revised Laws of Hawaii 1945, as added by Laws 1949, c. 267, now § 293–21, Revised Laws of Hawaii 1955.

post. Victor Castro-Jusino, a private who spoke very broken English, asked Flores to help settle a claim against a local insurance company. Flores, accompanied by Castro, by negotiation arrived at a settlement, and three one-thousand dollar checks were issued therefor. Thereafter but few circumstances are perfectly clear. Castro endorsed these three checks and left them in the office of Flores. Upon the next morning, Castro was transferred from Hawaii to Puerto Rico for discharge from the army. Flores, upon that day deposited in a new account in the names of his wife and himself, jointly, the three checks in a bank other than that in which he kept his personal account. After about nine months, when Flores returned to California, the money was transferred to an account in the name of his wife in a Fontana, California, bank where these funds were mingled with other funds belonging to Flores and his wife. Subsequently this account was transferred to a joint account opened by Flores and his wife in the Citizens National Trust and Savings Bank of Riverside, California, and were later expended by Flores for his own purposes. Castro testified that, before he left Hawaii, he gave Flores his mail address in Puerto Rico. He later sent to Flores a letter from Puerto Rico giving a new address. Castro did not hear from Flores. Castro did not receive the three thousand dollars, or any part thereof, or any offer to pay the amount.

The evidence was sufficient for conviction. The testimony of Castro was that Flores represented to him that it would require a year and a day to process the checks, and therefore he entrusted them to Flores. This representation, so testified to by Castro, was, of course, pure fabrication, as Flores well knew, since he himself deposited the checks in an account the following day. The story of defendant is that, after Castro had left

his office, the checks signed by Castro were discovered by defendant and that on the following day defendant made an effort to deliver them to Castro on the transport and finally deposited them for safekeeping. Unquestionably, a jury question as to the credibility of the two witnesses was presented.

Defendant Flores called attention to other testimony of Castro, indicating that Castro did not endorse the checks for the purpose of allowing Flores to get the money and that Castro would not have given Flores the money in cash. But this is compatible with the idea that Castro conferred the title of the checks on Flores so that the latter could process them. Defendant presents some arguments which lead to entirely different implications. It is said Castro did not understand English and therefore his testimony is to be carefully construed and that he might well have misunderstood what Flores said. In another connection, it is said that Castro had graduated from high school, knew the nature of a check and that it could be cashed at any bank immediately after he signed it. It is also said some of the testimony of Castro shows that he did not intend to give title of the money to Flores. These conflicting inferences presented a jury question.

It is the contention of defendant that the evidence tended to prove an offense other than the one with which he was charged. Defendant seeks to present the question whether an acquisition of property by false pretenses was proved or larceny by trick.

No exception was taken to the instructions given. The objections to given and refused instructions are not before us on appeal.[2]

The argument of appellant that the evidence tended to prove him guilty of larceny and not of obtaining money by false pretenses is thus negatived by the finding of the jury, upon substantial evi-

<hr>

2. In its instructions, the court properly charged that the material allegations which the government must prove were that defendant "did knowingly and de-

signedly, by some false or fraudulent representation, statement or pretense, obtain from some other person, money or property."

dence, that he was guilty of the crime charged.

 The indictment charged defendant with violation of the provisions of § 11440, Revised Laws of Hawaii, which we hold created a new statutory crime which includes but is not limited to such common law concepts as larceny by trick and false pretenses. The interpretation given the California statutes dealing with the crime of obtaining property or money by false pretenses may well apply to § 11360, which was adopted a considerable time ago [3] and was construed by the Supreme Court of the Territory of Hawaii in Territory v. Taok, 33 Hawaii 560.[4] This section still stands as a part of the same code, as does the section under consideration, which was adopted in 1949, Laws 1949, c. 267 with the apparent purpose of getting away from this onus of construction.[5] But, if this be not true, § 11366, Revised Laws of Hawaii 1945, now § 289–7, of 1955, provides that, if a person indicted for obtaining property by false pretenses shall on trial be proved to have obtained the property "in any such manner as to amount in law to larceny," he shall not be entitled to be acquitted, but shall not be liable to prosecution on the same facts for larceny.[6] This discussion makes it clear that the conviction must stand on the record. Other points raised by appellant deserve no attention.

Affirmed.

3. § 11360, Revised Laws of Hawaii 1945, now § 289–1, Revised Laws of Hawaii 1955, provides:
 "Whoever shall designedly, by any false pretense and with intent to defraud, obtain from another any money, goods, or other thing of value, is guilty of a gross cheat; for example, the obtaining of money or other property from another under false pretense of being sent for the same by a friend or acquaintance of his; or obtaining money by means of a letter fabricated in the name of another."
 This section was first enacted in 1869. P.C.1869, c. 21, § 1.

4. In Territory v. Taok, 1935, 33 Hawaii 560, the Supreme Court of the Territory held that the then § 4246, Revised Laws of Hawaii 1925 (§ 11360, Revised Laws of Hawaii 1945, now § 289–1, Revised Laws of Hawaii 1955) was limited to the concept of obtaining property or money under false pretenses.

5. See Journal of the House of Representatives of the 25th Legislature, Territory of Hawaii, Regular Session 1949, pp. 735–736; Senate Journal, 25th Legislature of the Territory of Hawaii, Regular Session 1949, p. 986.

6. This provision was first enacted in 1876 (L.1876, c. 40, § 55) and exemplifies that, "in some states, by express statutory provision, a defendant indicted for false pretenses may be convicted notwithstanding the evidence may show that the offense was larceny." Clark & Marshall, Crimes (Kearney, 5th ed.) 525.